FILED

2022 Apr-18  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-00281-ACA-SGC |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Christopher Ford, proceeding *pro se*, has moved this court to enter a temporary restraining order. (Doc. 3). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. After careful review, the undersigned **RECOMMENDS** the court **DENY** Ford's motion for a temporary restraining order.

## Background

Ford, a former law enforcement officer, is an inmate housed in the Restricted Housing Unit (the "RHU") at Limestone Correctional Facility. (Doc. 1 at 1). The RHU consists of the disciplinary segregation dorms and the Protective Custody Unit (the "PCU"). (Doc. 1 at 5). The disciplinary segregation dorms house inmates who have shown violence toward other inmates. (Doc. 1 at 5). The PCU houses all former law enforcement officers at Limestone because of threats against them from general

population inmates. (Doc. 1 at 5). It also houses "catch-outs"—general population inmates (usually drug addicts with large debts or gang member informants) who require protective custody because of threats against them from other inmates. (Doc. 1 at 6). Many of the catch-outs continue to use drugs in the PCU. (Doc. 1 at 6).

Defendant Shannon Caldwell oversees the RHU. (Doc. 1 at 5). According to Ford, Caldwell requires PCU inmates, including Ford, to work as runners and dorm cleaners in the disciplinary segregation dorms. (Doc. 1 at 5). Caldwell threatens to lock them in an isolation cell if they refuse to follow his instructions. (Doc. 1 at 5).

Ford has been incarcerated at Limestone since December 2014. (Doc. 1 at 1). Before December 2021, Ford had never been disciplined for his behavior in prison, nor had he ever been placed in isolation. (Doc. 1 at 2). But since December 2021, Ford has been placed in an isolation cell on three different occasions. (Doc. 1 at 2-3). Twice, Ford was told he was on an investigation hold, but once he was held for 10 days with no explanation. (Doc. 1 at 2-3). Also, some of Ford's personal property was confiscated, and his inmate account has been frozen. (Doc. 1 at 3).

Ford brings five counts against the following defendants: the Alabama Department of Corrections, John Hamm, Deborah Toney, and Shannon Caldwell. In Counts I and II, Ford contends his unexplained isolation hold and the unexplained seizure of his personal property and inmate account violate his due process rights. (Doc. 1 at 3-4). In Counts III and IV, Ford brings Eighth Amendment claims of

deliberate indifference, asserting he is exposed to a substantial risk of serious harm by working in the disciplinary segregation dorm and living with catch-outs. (Doc. 1 at 5).

Finally, in Count V, Ford complains his living conditions violate the Civil Rights Act. Ford claims he has requested medical treatment for knee pain and PTSD but has not yet been treated. (Doc. 1 at 8). Ford also alleges (1) his cell is unlivable; (2) the prison is not ADA compliant; (3) he has been denied regular visitation with his family for the past two years; (4) he not been provided a meaningful way to exercise his religious rights; (5) he has been denied access to the law library for several months, and (6) he has not been provided with any educational or training opportunities. (Doc. 1 at 8).

## Request for Temporary Restraining Order

Ford filed his motion for temporary restraining order contemporaneously with his complaint. In his motion, Ford claims he fears the defendants will retaliate against him for filing this action because they have allegedly retaliated against other inmates who filed lawsuits, including subjecting them to physical violence, removing their phone and video visitation rights and privileges, destroying evidence, changing the inmates' classifications, and restricting other privileges. (Doc. 3 at 1). Specific to his situation, Ford asserts an unnamed employee said Ford "should not complain or he might be transferred to St. Clair Correctional Facility where the doors

do not lock and he would be the target of other inmates." (Doc. 3 at 1). Ford also believes that, absent a court order, the defendants will dispose of his personal property, disable video cameras in the RHU dorms, and destroy past video recordings. (Doc. 3 at 1-2).

Ford asks this court to enjoin the defendants from transferring him from the PCU at Limestone; changing his inmate classification; freezing or deducting from his phone account; restricting his phone or tablet use; and subjecting him to shakedowns, strip searches, harassment, physical violence, or any other retribution. Ford also asks this court to order the defendants to remove him from isolation and return him to the PCU dorm; restore the full balance of his inmate account; inventory, in Ford's presence, all personal and other property taken from Ford; and preserve all video recordings from the RHU dorms.

## Discussion

The issuance of preliminary relief is an extraordinary remedy to be granted only under exceptional circumstances. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Motions requesting such relief must be evaluated under strict standards. *Martinez v. Mathews*, 544 F.2d 1233, 1242 (5th Cir. 1976).[1] In addition, a temporary restraining order or preliminary injunction should issue only

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

when the plaintiff has met the four-factor test established by the Eleventh Circuit for the granting of such relief.[2] To be entitled to preliminary relief, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) that [he] will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1262–63 (11th Cir. 2004)). "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Id.* (alteration and internal quotation marks and citation omitted).

After thorough consideration of Ford's complaint and motion, the undersigned concludes Ford has not alleged any exceptional circumstances justifying the issuance of a temporary restraining order. Neither has Ford convinced the court that there is a substantial threat he will suffer irreparable injury if the injunction is not granted.

---

[2] The standard for obtaining a temporary restraining order is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010).

5

Ford has not demonstrated a substantial likelihood of success on the merits. As a convicted prisoner, Ford has no constitutional right to be housed in a particular institution or a certain section within that institution. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Sanchez v. McCray*, 349 F. App'x 479, 481–82 (11th Cir. 2009). Nor does he have a "liberty interest in a particular classification, prison assignment, or transfer, even if he experiences more burdensome conditions than before." *See Fulwood v. Fed. Bureau of Prisons*, 568 F. App'x 753, 756 (11th Cir. 2014); *see also Jones v. Diamond*, 594 F.2d 997, 1015-16 (5th Cir. 1979) ("[C]lassification is a matter relegated to the discretion of prison officials.")

Nonetheless, prison officials may not transfer an inmate in retaliation for exercising his right to file grievances or complaints against prison officials. *See Burns v. Warden, USP Beaumont*, 482 F. App'x 414, 416 (11th Cir. 2012); *Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009); *Bridges v. Russell*, 757 F.2d 1155, 1157 (11th Cir. 1985). Here, however, Ford's claim that the defendants might retaliate against him by transferring him or changing his inmate classification is purely speculative. A plaintiff is entitled to injunctive relief only if the threat to him is "a real and immediate—as opposed to a merely conjectural or hypothetical— threat of *future* injury." *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quotation marks and citation omitted) (emphasis in original). Ford has not met that showing.

His allegation that an unnamed prison official suggested he might be moved to St. Clair if he complains is not sufficiently specific to demonstrate a "real and immediate" threat. While Ford claims he has "reason to believe" the defendants will dispose of his personal property, disable dorm cameras, and destroy past video recordings, he does not provide any detail about the basis for his belief. Ford's fears about potential retaliation are not sufficient to demonstrate a "real and immediate" threat, as opposed to a hypothetical threat of future injury. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Ford's claims are based on his belief that the defendants have harassed other inmates, but he does not allege the individual defendants he named in this lawsuit have threatened him. He has not shown the conduct at issue is imminent and no other relief is available. Nor does Ford identify the individual who told him he might be transferred to St. Clair if he complained. Absent such factual allegations, his claim that he will suffer harm is speculative.

In addition, Ford's claims about his phone and inmate account are monetary in nature. These claims are capable of being redressed through money damages and therefore are not considered "irreparable" harm. *See Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) ("Any injury is 'irreparable' only if it cannot be undone through monetary remedies."). Finally, enjoining the defendants from harassing or retaliating against Ford or from destroying property or evidence would amount to a broad instruction to the defendants to obey the law. Rule 65(d) of the

7

*Federal Rules of Civil Procedure* requires a request for an injunction to be specific; an injunction which merely orders a defendant to obey the law is too broad and too vague to be enforceable. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999).

## RECOMMENDATION

For these reasons, the Magistrate Judge recommends the court **DENY** Ford's motion for a temporary restraining order.

## NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The plaintiff must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The plaintiff also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A plaintiff who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the plaintiff's objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

The plaintiff may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may appeal only from a final judgment entered by a District Judge.

**DONE** this 18th day of April, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE